Good afternoon, Illinois Appellate Court, First District Court is now in session. The First Division, the Honorable Justice Michael B. Hyman presiding, case number 21-0984, Nancy Clayton v. Oakbrook Healthcare Center. I'm just gonna, I'm in a different room at a school that I ever was in before, and it must have an automatic timer on the lights, so you guys can keep talking, but I'm gonna go turn on the lights again. In the meantime, good afternoon. You have to move in these newfangled court classrooms, you have to move or else they turn off the lights. Okay, we're ready. I'm sorry, gentlemen, I apologize. I'm sure we'll be moving. So good afternoon. I do apologize for a little late start. We just finished off with the prior case. My name is Justice Michael Hyman, with me Justice Aurelia Puczynski, and Justice Carl Anthony Walker. We will conduct ourselves as if we were in the courtroom, in that we will interrupt you from time to time and ask questions. Please finish whatever your thought is and answer our question. The appellate, you have five, you can reserve part of your 20 minutes for rebuttal. Each side has 20 minutes. So when you introduce yourself, please let me know how long you want for rebuttal. If you each would please introduce yourself. Good afternoon, justices. Good afternoon, counsel. Carter Corey on behalf of the appellants who are the defendants in the case. I would like to reserve 10 minutes for rebuttal, please. Okay, real quick, introduce yourself. I'm sorry. Good afternoon. As Michael Rasek on behalf of the plaintiff appellate. Thank you. Thank you. Any questions? If not, Mr. Corey, please proceed. May it please the court. Carter Corey, once again, on behalf of the appellants, the defendants, just like presiding Justice Hyman says, tell me your two strongest points or tell me your main point. There's a lot of I got a lot of notes here. So I want to take my first 10 minutes just to focus on what appellants believe are the only two issues on appeal today. I just have to say you read my mind. That was going to be my question to you. I heard you on previous oral arguments, Justice Hyman. So I knew it. I was gonna front it before you told me. The appellee has in addition to responding to the two main issues on appeal has thrown a whole bunch of de novo issues, some proper some improper in appellant's opinion, which I would deal with in the rebuttal if I have to if this court does entertain them. But I want to focus on the two primary issues on appeal that I asked these justices to consider the one there's two but the second one is in the accepted the plaintiff's argument. In the motion, we filed a motion to dismiss and compel arbitration. And in the response, the one of plaintiff's arguments was that there is a completely separate punitive treble damages waived clause. And because of that clause, punitive damages are waived. Correct. Therefore, though, this is where the the the error is, therefore, attorneys fees are not collectible under the above mediation arbitration clause. And the plaintiffs argue it by citing a case in support of it. Sorry, the glass case, and the error which the plaintiff made and which the trial court judge made was the glass case deals with the exception. As all attorneys know, you can only get attorney's fees if it's in the agreement, or if it's statutory. And so the glass case deals with the willful and wanton exception. That is one there is in that case, there the defendant was involved in intentional fraudulent concealment, and willful and wanton actions. So the appellate court said to the trial court the appellate court confirmed is if we're going to get attorney's fees, then we don't have a right under the agreement or statutory, then we have to wrap it into punitive damages. And the trial judge took this case. And then in our case, and said, Yes, punitive damages are not separate from attorney's fees. And that's the exception. That's the willful and wanton exception. And therefore, she said, the mediation arbitration clause is therefore substantively unconscionable, because we are depriving plaintiff of attorney's fees. The major flaw is the Nursing Home Care Act, section 26202, I believe it is 3602 calls for attorney's fees and costs. So the willful and wanton exception does not apply. And the glass case is completely distinguishable. And the trial court judge in our case relied solely on the glass case. So the first argument she makes is that it limits attorney's fees. It doesn't. Because number one, it's statutory under the Nursing Home Care Act. And number two, the arbitration clause calls for jams, arbitration to be a chance. And jams, this is undisputed by by a police counsel has language that says they are guided by the rules of law, and may grant any remedy or relief allowed by the party's agreement, or law for which the arbitrator believes to be just and equitable. And it also says the award of the arbitrator may allocate attorney's fees and expenses, if provided by the party's agreement, or allowed by applicable law. So therefore, the punitive trouble damages waive clause did not eliminate the chance for plaintiff at arbitration. I think the justice want justice want to let you get your argument out. And we've allowed you to do that. But But as you realize, we can affirm the trial court on any basis in the record. And one of the issues that's come up in their argument, that the person who signed the agreement for arbitration did not have the authority to necessarily bind the bind them to the arbitration, because that person only had the power for attorney for health care. And there was another daughter, that person's sister, who actually Miss Clinton's sister who actually had the power of attorney to bind on the arbitration. I want to respond to that. Yes, Justice Walker, thanks for asking me that question. I was prepared for that in my rebuttal, but I could accept it. I could I could answer that right now. It's twofold. The first thing is the record, the record only has the affidavit of Paula Park from defendants, and the attached contract of the resident plaintiff. There the powers of attorney that were attached to the response to motion to compel arbitration were not accompanied by an affidavit. There is no foundation, we objected in the response at the trial court level. And that's the trial judge found that there was not procedural unconscionability, because the evidence only evidences the affidavit of our admissions person, Paula Park, and the contract. So they attach two powers of attorney without an affidavit from anybody authenticating what those were. And then they make arguments at the trial court level and here on appeal, telling us why the no counter affidavits and ever ask it, take, let's take it out of event issue right now. Let me just ask the same question a little different. If the Ms. Jensen had not paid her bill, let's say what she was living and didn't pay her bill to the facility to Oak Brook, you have sued her in a civil court, her personally, right? That's justice. Okay. And when she died, if she still hadn't paid her bills, you could still sue her in the civil court, right? No question about that. Her estate. Yes, of course. Yeah. Okay. Now, there's nothing that says that these aren't authentic powers of attorney. And in fact, their power of attorney is reflected in the contract because it says POA and we have a copy of it. So if we look at that POA, the POA itself says that a paragraph four, it terminates on her death, except for funeral arrangements. It terminates on her death. So if it terminates on her death, there's nothing for her daughter, Earl Jensen to do anything because she no longer has a power of attorney. Is that correct? Yes. Okay. And in the contract itself, it says that at death, the contract itself terminates, correct? And that's your language, your client's language. And they put that in there in this contract where there were no discussions and no ability to change anything. It's in that contract, correct? Yes. Okay. So my next question is, is there anything ambiguous about the contract in your view? No, no justice. Okay. So there's the death of Laurel Jensen. And in fact, the POA terminates it to the healthcare. So you were not sued by that daughter. You were sued by a daughter under her power of attorney for other matters, property matters, correct? Yes. Okay. And there's a copy of that here. And there's no reason to believe that isn't a true and correct copy. And that has for claims of litigation and so forth. And that's why this case was brought by Nancy I don't know why, which daughter was made the independent administrator. I don't think it has to do with the POA. Well, we have the POA that But the POA terminates. So the decision to make one daughter, the executor, I don't think those facts are on the record at all. In addition to the two POAs, were never attached to the residency contract. But I can answer your questions, Your Honor. All right. Well, even with the one POA that is attached, you want to go to arbitration with Nancy Clanton, who is not her sister. The sister with a POA has nothing to do with this litigation at all anymore. So you're the one that said it's terminated. It's done. It's kaput when she dies. So that alone, why doesn't that just end it? That's one of the arguments they make in the alternative, as you mentioned. And we can, again, affirm on any basis. So what's wrong with that? I'll address that first, Justice Hyman. And then Justice Walker, I do have the second part, which is the Fiala case, answering your question. So Justice Hyman, we filed a motion to cite to the Mason case. The Mason case was decided by the Fourth District. Trial counsel was that the same arguments were made almost an identical case. They addressed exactly what you are bringing up, Justice Hyman. And what they did is by quoting the Illinois Supreme, citing to the Illinois Supreme Court case, the Carter case, they said, the difference here is that the Survival Act is allowing a representative to sue for something that happened before the death after the death. First of all, it's a court equal in stature to us. We don't have to follow it, correct? Correct. It's a recent case. And Carter has nothing to do, as you both say, there's nothing in Carter about termination upon death. So it relies on Carter. And so what I don't understand then is why wouldn't then Clanton, she could still bring that action that even though it accrued before, her sister has nothing to do with any lawsuit as a result of the death, that POA is gone. But two separate issues are the binding enforceability of the POA executing, which Fiala says the POA health care, it could still be binding. And then how does it say it could be binding, though? The Fiala case says that you need two things. If the agreement and this is Judge Justice Walker, this answers his second part. If the agreement is separate from the contract for services, undisputed, right? I mean, it's not binding if it's separate from the contract. We know this is this is not a separate we understand, right. And then here's the important if it's not required for admission, it's not binding. And it turns in the POA health care turns into a health care decision if it's required. Now, this arbitration clause, and there's many, many, many cases that say if it's part of the admissions agreement, and if it's the admissions agreement is required for admission or continued admission, which is the case here, then it is required. And if you have those two, it turns your POA health care, it turns it into a health care decision to bind the the agent to the terms of the agreement. No, but the agreement, but the agreement, but I still there aren't a lot of cases in this. And one of the few cases is Mason, where there's a termination of that agreement. And that was in your agreement. And so because you terminated, it was terminated, it's gone, she's no longer has any responsibilities, whatever, and isn't even bringing the lawsuit that you want to take to arbitration. So I think there's a there seemed to be a disconnect there. I agree with you, Your Honor, if if she was alive, if someone is hurt at a nursing home, and then sues after they have been discharged or left, then the argument is that contract is not enforceable against them. But the whole key to the Carter case, and the key to the Mason case was if you're going to give a representative of a decedent to go back in time and say, on this day, my mom, dad, whoever it is was injured. And I'm going to sue you for what happened back then, even though they they they are not alive, then the court says, you should go back, was there a valid contract at the time of the alleged injuries that they're going to sue? And the court says, even with a clause that says contract terminates, it says it's still you go Survival Act claims go back to what the date of the injury was the contract valid, then our position is yes. And you're relying on what case for that preposition, Mason, that's that's Carter cited by Mason. And Mason, I don't think Carter applies, potentially, because it doesn't have this termination clause. So in the Mason relies on that. So and again, we don't have to follow Mason. So to me, this is a question that we we can look at with new eyes. The fact is, there is nothing that would have prohibited your client and tell me if there was from not having that clause in their determination clause, they didn't need that they could have said that upon death, arbitration continues. For any purposes, you know, whatever, you know, they could have, they didn't have to put that in there. There are many agreements that don't have it. Correct? Yes, on the record, I can't answer that without bringing something into the record. There's no there was never discovery by the plaintiff. But, but we know, there's no ambiguity. So yeah, we have this contract, we have this language, it says terminated, it's done. And the only person that could bring this lawsuit is the the other POA, which has no a connection with this, which is already done and over the contract. And you have the statute says that a healthcare POA is done and over at death. I mean, everything points to that. In this case, what what is unique, and which I don't, you tell me, but you have these two POAs, right? One healthcare, one property, and it happens a lot. Sometimes it's the same person, sometimes it's the same agreement, you know, they could sign it here, or whatever, your client didn't ask for the other one. Now, if that if that had been done, there would be different facts, but we don't have those facts. So on the facts we have, I still if if, if we if we don't follow FILA, there isn't any other precedent I'm aware of out there. Anywhere. Are you? No, Your Honor. And just to respond, also, the the the affidavit of Paula Park, clearly states that the daughter who represented she was the power of attorney, we don't have a copy of any power of attorney in the record, without foundation. So so we're arguing and relying on two powers of attorney that were added. But we know that we have a response to a motion to dismiss without foundation. We do have a power of attorney that was signed by her mother for her for the POA for health. And we know that this was a health situation. And we know that the health POA is separate and apart from the other POA. And the only way that she would have any power, otherwise, she didn't have any power to do what she did, then we can say, well, there's no, she did, she did something with you're not saying that the daughter had no power to do what she did. You she had the power from a POA, right? I'm saying the record shows that she represented to our health care POA. And we have a POA. Right? And then the case law, the case law under those two prongs supports that the health care can bind an arbitration clause under if it's required, and if it's not separate, which it is. So so you're going to get on the record, going back to an ally case that's recently decided? No, no, Fiala Fiala is is not an that's Mason. Mason has to do with the decedent's death, determination agreement of death in the survival. So Fiala, I believe is I can find the Fiala case, I believe that's, and that's not a federal case. No, no, no, it's it's I believe Illinois appellate court. I have it right here. Sorry, justice. I have it in here. I could grab it. But I believe that's an Illinois appellate court case. Maybe. I agree. It is. It is. Okay. And it's not new. I don't believe it's a relatively new. It's not the decision Mason that but it's an appellate, again, appellate court decision. Yeah, Illinois appellate court. Right. And those two prongs are used many times after Fiala, I believe to say, are you flipping the POA health care to bind this health care decision, you need these two things. We, we, we satisfied the two prongs, in addition to the fact that the record doesn't have anything other than a representation by a daughter, where where the Nursing Home Care Act lists all the people that could sign the contract. So we haven't even gone into a parent authority. You know, there's there's other arguments. We didn't go there because we've twofold proven that this element is satisfied. So Mr. Curry, then your position is that it was required for admission, and it was also it was also not separate. That's correct. Correct. It was part of the contract, and it was required for continued admission. Right, but she was already a resident of the nursing home prior to the signing of the the POA. I'm sorry, prior to the signing of the arbitration agreement. Right, the the the under the law when the payment source changes under Nursing Home Care Act, when your payment source changes, you have to sign a new contract. So at this contract, the one that's in the record, the only contract in the record that's by affidavit, there's a clause here that says that you have to sign a new contract when the payment source changes. And then there's also a clause in the contract that says if you refuse, if resident refuses upon seven days notice to execute a new contract, one required shall be the resident and shall be a basis for voluntary discharge. So I believe that's it's required for continued admission, or else the nursing home is going to move for involuntary transfer discharge. That satisfies the FIALA two prongs. Going back all the way back, if I may, if I have time, the initial argument that the trial court, they also said that because of the punitive damages waiver, they that is a cap on damages. And the case they cite to talks about if you limit attorneys fees, then you're capping damages based on the argument already made in our briefs. And today, there was no cap on attorneys fees. The punitive damages clause just did that, which was removed punitive damages at arbitration. So the case about capping damages because of limiting attorneys fees, we believe is distinguishable. And then the third reason the trial court judge said is that you are not allowing the plaintiff to get all remedies at law by limiting their attorneys fees, or even punitive damages. And we argue that's not true because the damage is allowable under all of the claims in the plaintiff's complaint. They don't, they're not allowed punitive damages. They're allowed actual attorneys fees and costs, which is enforcing the damages waiver. It's still as all those damages are allowed at arbitration. And then I just, there's the second argument I do want to bring up before my time's up, unless someone has a question. It's, I think the most powerful argument is the severability argument. The second argument, the trial court judge said, it's not severable. Sorry, I just need to find the trial George trial judge sites, a couple of cases with employment agreements, federal cases, and says it's at our discretion, whether we blue pencil or sever. Now I've been involved in many employment agreements where we ask your honors to blue pencil an agreement. And the trial judge has said, I'm not doing your job. You should have narrowly limited your restrictive covenants. And I, that is what those two federal cases that the trial judge in this case cited. However, the, the, there's another case, a couple of cases that say, sorry, I lost my train of thought. The, the, you can sever. You're saying that the bottom line is you're saying the judge read it right. In the case, it doesn't apply. Right. It doesn't apply. It applies to employment. I want to go back to, to Fiala for a second. Fiala, the fact were that the plaintiff executed an Illinois statutory for chart form POA for healthcare, appointing her daughter's agent. Now that was one of the facts Fiala. You're saying, well, we don't have a POA here. So we don't know. So maybe what we should do is send this back for a hearing before the judge to find out some of these factual issues with regard to the POA, because what you're, you can't have it both ways and say, well, we don't know because it's not here, but there's a POA that's the daughter's side. We don't know if the daughter you're saying, I don't know if the daughter had authority to do it. That was your argument. So you can't have it both ways. If it's going to be enforced, then you're saying there was a POA. If it's not going to be enforced, we got to find out. Well, we argued in the alternative. The first argument was there's no evidence on the record of a POA. There's just the representation of the daughter that she's the POA. Well, then if you have it that way, we got to send it back. It seems to me we got to, we don't know. You're making an assumption. Right. But even in alternative, assuming there was, assuming we accept plaintiff's argument and say, yes, the daughter that signed was the POA healthcare, the Fiala case still makes it a binding POA healthcare turns into a binding execution of that agreement. That's what we're saying, Neera. But if I'm not mistaken, in Fiala, that did not have the clause about at death in the agreement. With Fiala, that was the Mason case. That Fiala didn't have to do with termination upon deceit and stuff. Fiala just had to do with whether or not the POA healthcare could sign a contract. I understand. But we have a different contract here. The contract, which is not We can't ignore that language. Okay. In order for you to win, we have to ignore that language, even though we have a case that doesn't, you know, if you're relying on Fiala, it doesn't, that's not the situation Fiala. The only case that's relevant is Mason. Yes, Your Honor. And Mason, like I said, it's almost identical facts. We can come up with it. We don't have to follow Mason. Of course. They may have gone down the wrong, I'm not saying they did or didn't, but we don't have to follow it. And we'll find out what Mr. Rastchik says. But they saw it one way, and there are other ways to look at it. And so what is your argument as to why we should, just because they said it, it's not a good reason to follow it. Why should we follow Mason? Because I believe the argument, just on this issue, there's many issues that come up in Mason. But we, in our reply, we crafted the wording almost the same way, not as eloquently as the Fourth District. Fourth District said, if you're going to have a survival act, and you're going to give a decedent's representative the chance to go back in time and sue for something that happened prior to their death, after their death, then you should go back in time. Was there a contract during the moment of injury or the claim? If you're going to give that right under the Survival Act. And then in the Carter case, they say, wrongful death, we're not doing it because you're not standing in the shoes of the decedent. And I think that's very sound reasoning. And I asked the justices of the First District here to adopt the Fourth District's very reasonable and should be followed. Thank you. Why don't you want to finish up and we'll save your 10 minutes for rebuttal. Thank you, Justice. I just wanted to finish up with the severability clause. The justice quoted employment agreements, we cite to a case called Tortorello, where the arbitration clause is enforceable, but for a disclaimer of punitive damages, then the court should sever. And then going back to Kinkle, which is cited over and over and over when we talk about arbitration, and also the Keith case, they say you can sever, the court can sever if the arbitration clause does not depend on the offending provision for its effectiveness. And in this case, if the court, if you're, if this justice, appellate justices, remain, order to strike the damages clause, that will not affect the arbitration clause. Number two, it said the existence of a severability clause in the contract, which we do have, it's undisputed that there's a severability clause. And three, which, which in all my arguments, I asked the justices to please consider this. Kinkle says this over and over and over. The strong public policy in favor of enforcing arbitration agreements is best served by doing it, by severing the offending clause, or by your, Justice Hyman, by, by going along with the fourth district. You know, my, underlying all my arguments is the strong public policy in favor of enforcing arbitration agreements. And like the trial court judge said, in her opinion, enforcing arbitration agreements in the has been analyzed and accepted in every judicial circuit and the United States Supreme Court. Thank you, justices. Thank you. Good afternoon, your honors. As I said, Michael Rasak on behalf of Nancy Klan, who is the plaintiff in the appellee in this case, court spent some time on the termination issue. I think that's been pretty well discussed. I'd like to move to, I want to hear what you have to say. I mean, all right. Maybe it's not an issue. Maybe because you don't have any record that there were these POAs, there was no affidavit. So I guess you make that is your second argument in your brief. Maybe it's something we can't consider because you haven't supported it enough. I'm happy to start with that. The, as everybody has agreed, the contract itself is clear that it terminates on death. If they did not want it to terminate on death, we cited to the court other cases where in one case, it was a nursing home, put a provision in the contract that said, this does not terminate. The contract does not terminate with respect to arbitration. If there's any, if there is any ambiguity in that regard, the case law we cited in common law is that it's held against the drafter, which is the nursing home. Do you believe there's any ambiguity in this agreement? I don't believe there's an ambiguity. It says it terminates and that's it. That should be the end of it. I'm just saying if the court finds for some reason that there's an ambiguity, then it was up to the nursing home to clarify it by saying, look, we know it sounds like we meant to terminate. We really didn't mean it terminates when it comes to arbitration. We want arbitration clauses to continue to survive. All right. But then you get, it all boils down to whether we file Mason or not. That's correct. Mason addressed this at the very end of the opinion. I'm not suggesting that makes it a bad argument, but they relied solely on the Carter case. As we noted on a brief, Carter doesn't have anything to do with the arbitration termination language that we have here. It didn't have that language in it. That's what's so critically different. What the Mason court said was that the contract before it did with respect to termination did not suggest it did not apply to claims accruing before death. It's almost difficult to say that and may have it sound like it makes sense. The court said the contract did not suggest that it did not apply to claims accruing before death. Ergo, that court said, so I must, that's simply not good logic. And if it says it terminates, it terminates. And that was why I led with the point that says, if you don't want it to terminate when there's arbitration about something accruing before death, say so. That would have been simple. So Mr. Rentsch, I had to get a chance to ask Mr. Corey about this because there were other discussions going on, but your position is that it's clear. They see Mr. Corey's position seems to be that it's not clear to some extent and that therefore it doesn't terminate. So your position again, is that if it's clear, well, either way that if they believe it's not clear, then it will be interpreted in favor of your client rather than in favor of the nursing home. Is that correct? That's correct. I really wanted Mr. Corey to respond to that, but I didn't get a chance to ask him that question, but you can go on. The other main point I think is whether or not the arbitration agreement, the contract itself is valid or not, because the person signing it only had a healthcare power of attorney. And there's two reasons for saying that it wasn't valid. We have the FIALA and only case- Go ahead. Go ahead, Justice. Because Mr. Corey, he's already addressed that argument, Mr. Rentsch, because once you have a situation where you're signing the agreement and the agreement is required in order to become a resident, and it's a part of the actual document to become a resident, then it becomes a healthcare issue. And in this case, it wasn't, in fact, healthcare issue. So it seems like your stronger argument was the one you were just making, but go ahead. Let me- And that's just exactly where I was going to proceed, Your Honor. We agree that you have to have a contract between a resident and the nursing home. It says right on the contract it's required by federal law, and that's true. You have to have a written contract. What you don't have to have is an arbitration clause in that contract, and that's our point, and that's what's critical here. And this contract, by the contract I'm talking about, the whole nursing home contract does not say in it, you must agree to the arbitration clause in this contract or we will not admit you. And there's a reason it doesn't say that. Some contracts have that. You'll see them in other cases. That doesn't matter. The fact that it doesn't have that, I don't see how that's a reason. Because if it doesn't have it, that makes the arbitration clause optional. You have to have a contract. Where does it say, what case says that? If you don't have that clause, it's always optional? I'm going to move in that direction. Is there a case that says that? No. I'm not aware of a specific case yet that says exactly that, but because I have other cases pending in the process now. But I point out, there's nothing anywhere that says that this was a take it or leave it proposition. In these cases, the nursing home advocates always tell the people you can review this contract. Nothing said- Mr. Ressig, what Justice Simon is stating now, though, is what difference does it make? It's been signed already. It is a part of the agreement, so what difference does it make whether it was optional at the time? That's the critical point. If it was optional, then it's not a healthcare decision. If Deborah Katalik had the power to strike that out, it's optional. She had to have that power because the code of federal regulations that we just cited recently to the court said that you cannot make arbitration a condition of admission to a nursing home. That is against federal law. This was a Medicare patient, so it had to be optional. It would be illegal for the nursing home to make admission to this nursing home conditioned upon agreeing to arbitration. Is that in your brief? No, we cited that authority. We just found the authority days ago. But it's not in the brief. There's legal court decided. We just received the order Monday. I'm not aware. I haven't seen that case. I'm sorry. I don't know anything about that. Is it part of the federal statute? It's part of the code of federal regulations. It's 42 CFR 483.70. That's why we cited it when we found it. It's something that doesn't come up in the case. Did you file something to cite additional authority? I'm not aware of that filing. I filed a motion last week to cite this as additional authority, and the court allowed that motion to be filed. It says the facility must not report. You got a copy of that? I Yes. There's no case, though, Your Honor. It's just the CMC Federal Rec. Okay. Well, it's in the rules, so I mean, it's printed in the rules that they have to be optional. They can't be mandatory. Absolutely. If you're a Medicare patient. And this was a Medicare patient. That alone should simply end this argument, even if the court does not accept my argument that there was no reason that the person looking at this agreement on behalf of resident could not have taken a pen and just X out the arbitration clause because it was optional. No one told to tell it that she had to sign the entire agreement. Nobody said you have to agree to arbitration. You don't have to make sure I understand what you're saying. So under that, what you're saying that the law requires a disclosure of that to who's ever signing the contract, because they're not going to know federal regulations. Even more than that, it says must not require any resident to sign an agreement for binding arbitration as a condition of admission. It says the nursing home, not that they just have to tell them about it. They can't do it. It's wrong to do it. And that unless they say it's not a condition, you can agree or you can disagree that way. That's fine. And on that alone, this case just remain. And it's a complete defense. But wait, there's something different going on here, though. It's isn't it correct that when the when when the when the new contract was signed that included the arbitration clause at that point, she was no longer a Medicare patient. No, I don't. That's not my understanding from the record at all. Isn't it? I'm seeing a nod from Mr. Corey. Well, let me ask the question. She I thought she went in for Medicare to private. That was my understanding. It's not in the record, though. Justice. Well, there's something in the record, because that was my understanding from reading everything. And that was my that's why that's why this agreement was signed. And we all agree that it needed to be signed. I mean, that's not an issue here. But the reason it was signed is that she went one way to the other way. In my understanding from from reading everything that's before us, OK, it's either in the briefs or it's somewhere because I read it, is that that was the reason it was from Medicare to private because it was a patient. We discussed this earlier during this this argument. And it's my understanding that that's why the agreement needed to be signed. So therefore, the federal regulation would not no longer apply. I'm actually not in a position to get it. Surely what you just said, Your Honor, it surely makes sense. I'm not in a position to commit to that without checking to ensure it because it talks about what the facility must do, not what it must do with respect to a patient. I don't know the scope of the law. I'm sorry. At any rate, the next issue was whether or not the bar on attorney's fees that came in by way of the rule saying that we can only get actual damages made the contract unconscionable. And as I understand it from their reply brief and from. But you agree with the fact that the attorney's fees are not punitive damages, correct? That's correct. But as I understand it from the reply brief and Mr. Corey's presentation today, the nursing home is agreeing that the nursing home acts provision for attorney's fees does apply. We were concerned only that it said it may apply. And that doesn't bind the arbitrator to the law, because I understand that they've agreed. In fact, does apply. And if it does apply, then that takes care of that argument for us. Yeah, and I think that what Mr. Mr. Corey kind of led into that by when he argued that the only time it that attorney's fees are. Well, the attorneys fees are allowed in situations where there's where there's there's there's the one time and willful conduct. So. And and just be clear that the nursing home, nursing home care act allows attorney's fees to any plaintiff in a nursing home case who prevails. They don't have to prove what they just need to prevail. And if that's the law and they recognize that, then that takes care of that issue. Unless the court has further questions, that pretty much sums up what I would have to say today. We ask that the court be affirmed. Hearing none, Mr. Corey, you get the last word. Just thank you, Your Honor's justices. Justice Walker, I know you had a question for me. I did. I know you asked Mr. Rathsack and said you want me to answer. I do not remember. Can you re-ask me that question, please? Yeah, the question was it was it was I think we've kind of covered it, but it was regarding whether or not the it's really related to the federal regulations and whether or not they're going to apply if the if she was signing, in fact, a new contract as a non-Medicare patient. And if that's the case, then the federal regulations don't apply. But if she was still a Medicare patient, the federal regulations would apply. I think that you kind of jumped in and I think we've covered it. But the only clarifications based on Mr. Rathsack's arguments I wanted to make was that the case, you know, they said the arbitration provision was not optional or freestanding. So it was part of the established contract. They gained admission or in our case, continued admission. So it was required. So so I just piggyback Justice Walker, bringing to our attention if she was private pay and the the center for Medicare's federal reg, which was presented Friday in a motion where Mr. Rathsack kind of made assumptions on my argument. I think it was an improper motion. I don't think it's part of the briefs at all. There's no case at all. But but if it was private pay, then it was required if it was in the admission contract. It doesn't have to say this arbitration provision is required. Fiala says if it's part of that then it's required. And then lastly, I just sorry, your honor, your justices. Oh, there's no record. Once again, I'm going back to the record, the affidavit of Paula Park, where she explained every clause of the contract. She entertained any questions. The arbitration provision is part of the contract. So the only evidence in the record is Paula Park's foundation for the contract. So any arguments that the daughter POA was not explained or given a right or told it was required, that's inadmissible speculation. I asked the justice just to consider the evidence in front of us. Otherwise, I thank you for your time. And I ask the justices to please reverse the trial court's denial of the motion to dismiss and compel arbitration, to to order the court to dismiss with prejudice, the counts, the survival accounts, the rest ipsa and the common law negligence and compel arbitrate mediation and or arbitration. And then the alternative to send it back down reversing but severing the damages clause, which I don't believe is unconscionable. But but but in the alternative, at least reverse the trial court's denial of the motion to compel order arbitration and sever the offending clause. Thank you very much. Well, and Mr. Corey, just to be clear, then, Mr. Ratzak said this, and I'm not 100% sure that you said it earlier, that you agree that if this matter is arbitrated, that attorneys fees would definitely be allowed, correct? Yes, based on the law and the jams language. If the Nursing Home Care Act calls for attorneys fees and costs, the arbitrator can award it. The punitive damages clause has nothing to do with that. Yes, Justice Walker. Okay, I'm sorry. It's very unusual. I've never done this. Could I could I ask the court if Mr. Corey and I could submit something short addressing the question of the Medicare private pay to clarify that for the court? I'll tell you what we'll do. If the court wishes to do that, we'll let you know. We'll take on your advisement. I think what we have to talk about. What I want to do now is just think both sides. I'm going to say something we don't normally say, but we've talked about it. Both sides. Your briefs are excellent. Well written. We don't good job of expressing your opinions on this case, the law, the facts, in a way that is very understandable and was excellent. So congratulate yourselves. You're also you're both very good advocates for your clients and we appreciate your advocacy this afternoon. We'll take the case under advisement and we will if we're going to ask for that or allow that or a motion, we'll do so by the end of the week.